UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WADE E. MONROE,

    Plaintiff,

*v.*                                    CASE NO. 09-CV-11738

COMMISSIONER OF            DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 14, 43.) Plaintiff's relevant employment history consists of 23 years working as a machine operator in a factory. (Tr. at 52.) Plaintiff filed the instant claim on October 7, 2005, alleging that he became unable to work on August 21, 2004. (Tr. at 43.) The claim was denied at the administrative level. (Tr. at 31.) In denying Plaintiff's claims, the Defendant Commissioner considered left tibia-fibula fracture and bilateral rotator cuff injury as possible bases of disability. (*Id.*)

On December 10, 2007,[2] Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the case *de novo*. In a decision dated January 25, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 20.) Plaintiff requested a review of this decision on February 8, 2008. (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 5, 2009, when, after the review of additional exhibits[3] (Tr. at 148-49), the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2]Plaintiff originally appeared on August 16, 2005. The ALJ sent interrogatories to William DeBolt, M.D., to provide a medical source statement and, after such answers were given, Plaintiff's counsel requested a supplemental hearing, which the ALJ permitted. (Tr. at 17-18.)

[3]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

at 3-5.)  On May 5, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of*

*Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

4

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

    **D.**    **Administrative Record**

The evidence presented to the ALJ reveals that Plaintiff sought treatment with Thomas Ververka, M.D., for abdominal pain suffered following a car accident in 2004 which caused spleen, duodenal and small bowel injuries. (Tr. at 107, 103-119.) In September 2005, Plaintiff underwent a esophagogastroduodenoscopy with a biopsy. (Tr. at 104-05.) The biopsy was negative. (Tr. at 106.) Dr. Ververka's post-operative diagnosis was dyspepsia with epigastric abdominal pain, and gastritis with patent gastrojejunostomy. (Tr. at 104.) Plaintiff also sought treatment for left shoulder pain with Anthony DeBari, M.D. (Tr. at 145.)

Plaintiff was also treated by B.D. Behan, M.D., for tibial pillon and calcaneal fractures of the right ankle. Plaintiff was fitted with an external fixator brace and continued to suffer pain and discomfort, all of which were caused by the motor vehicle accident in 2004. (Tr. at 132-38.) In August 2005, Dr. Behan noted that Plaintiff "continues to complain of pain" and "is unable to ambulate without a cane." (Tr. at 134.) Dr. Behan also indicated that Plaintiff cannot lift more than 50 pounds and that "they do not recommend any sustained walking or standing to exceed 10 minutes." (*Id.*)[4]

Dr. Behan sent Plaintiff to occupational therapy from August 2004 through August 2005 at Bay Regional Medical Center. (Tr. at 74-96.) As part of his therapy, Plaintiff adapted to wearing an insert in his right shoe. Upon discharge, Plaintiff reported that he tolerated the second insert but still had pain with sustained walking or standing. (Tr. at 74.) The occupational therapist noted that Plaintiff could lift 50 pounds but recommended that he not carry anything with two hands and that he not engage in sustained walking or standing that exceeds 10 minutes. (Tr. at 75.)

In May 2006, Dr. Behan noted that since the right foot insert did not work well, Plaintiff was given a brace, which did work well and allowed Plaintiff to walk without a cane. (Tr. at 140.)

---

[4]Presumably, "they" refers to the occupational therapist's conclusion. *See infra.*

7

In November 2007, Dr. Behan completed a Medical Source Statement wherein he concluded that Plaintiff has the ability to occasionally and frequently lift, carry or pull up to 20 pounds, sit about 6 hours during an 8-hour day, and is unlimited in his ability to push or pull. (Tr. at 147.) Dr. Behan also concluded that the above limitations would likely disrupt a regular job schedule with low physical demands for 40 hours out of 160 hours per month. (*Id.*)

A Residual Functional Capacity (RFC) Assessment concluded that Plaintiff can occasionally and frequently lift or carry up to 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday if allowed to periodically alternate sitting and standing to relieve pain or discomfort, and is limited in his ability to push or pull in both upper and lower extremities. (Tr. at 121.) The assessment further concluded that Plaintiff is occasionally limited in his postural abilities, is limited in his ability to reach in all directions, and should avoid hazards, but otherwise has no limitations in the manipulative, visual, communicative, or environmental areas. (Tr. at 122-25.) The assessment also noted that it differed from the treating source statement submitted by Dr. Behan (which concluded that Plaintiff was permanently disabled), but further noted that Dr. Behan's statement was made "in [the] context of describing [Plaintiff's] prior job, which he described as labor intensive work." (Tr. at 126.) The assessment explains that Plaintiff is "unable to return to [his] prior job" but that Plaintiff is "still capable of activities described in [the] RFC." (Tr. at 126.)

Plaintiff's daily activity sheets show that Plaintiff is able to care for his own personal needs, cook, clean, shop, and watch television. (Tr. at 67-69.) Plaintiff testified at the administrative hearing that he can stand for 15 minutes, walk for 20 or more minutes, uses a cane for long walks, has no trouble sitting, no trouble using his hands, and is able to lift 10 pounds. (Tr. at 154-55.) Plaintiff testified that he does some cooking, cleaning, laundry, dishes, a little shopping, bathes and

8

dresses himself, takes out the trash, mows the grass on a riding lawn mower, drives a car, and likes to tinker with "[s]mall motors or anything that I can get my hands on that I can tear apart or put back together." (Tr. at 156-58.)  Plaintiff also testified that he needs to sit down a couple times a day and elevate his foot above waist level for about an hour to bring the swelling down.  (Tr. at 160-63.)

The ALJ asked the vocational expert (VE) to consider a person with Plaintiff's background and

> [a]ssume a person who's limited to lifting, carrying, pushing, and pulling no more than 10 pounds frequently, no more than 20 pounds occasionally.  Assume a person who can stand or walk two hours in an eight-hour work day, and sit up to eight hours in an eight-hour work day.  The person should not climb ladders, ropes, or scaffolds.  Should not need to kneel, crouch, or crawl.  Assume a person who can rarely climb stairs.  Rarely is not never, but it's less than a third of the work day.  Assume a person who can occasionally balance and stoop.  Assume a person who should not need to reach overhead.  The person should not be exposed to hazards or to vibration, should not have to operate foot or leg controls.  There should be no exposure to extremes of temperature or humidity.  The person should be able to use a cane to walk and be able to wear an ankle brace while working.  The person should not need to stand on concrete while working, and should not need to walk on uneven ground.  There should be no continuous standing for more than 10 minutes at any one time.

(Tr. at 164-65.)  The VE testified that such a person could not perform Plaintiff's prior work but that there are a significant number of light, unskilled jobs in the regional or national economy that he could perform such as assembler, inspector, cashier, and packer. (Tr. at 165-66.)  When the ALJ asked the VE to consider the additional requirement that a person needs to elevate his leg to waist level during the work period, rather than on breaks or during the lunch period, the VE stated that requirement would be inconsistent with the jobs given. (Tr. at 166.)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since August 21, 2004, and that he met the insured status requirement through December 31, 2010. (Tr. at 16.) At step two, the ALJ found that Plaintiff's residuals of left tibia-fibula fracture and degenerative joint disease were "severe" within the meaning of the second sequential step. (Tr. at 15-16.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff could not perform his past relevant work as a machine operator. (Tr. at 18-19.) At step five, the ALJ found that Plaintiff possesses the residual functional capacity to perform a limited range of sedentary work. (Tr. at 19.) Therefore, the ALJ found that Plaintiff was "not disabled." (Tr. at 19-20.)

**F.     Analysis & Conclusions**

**1.     Legal Standards**

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of light work. (Tr. at 19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ failed to incorporate the Plaintiff's need to "'elevate one of their legs to waist level or above – while they're supposed to be working' and the VE testified that such an individual would not be competitively employed." (Doc. 11 at 7.) In addition, Plaintiff argues that the ALJ improperly evaluated the credibility of Plaintiff's complaints of pain and his specific need to elevate his foot for an hour or so to avoid swelling. (Doc. 11 at 7-12.) Finally, Plaintiff contends the ALJ failed to give controlling weight to the opinion of Plaintiff's treating orthopedic surgeon Dr. Behan who opined that Plaintiff's limitations would disrupt a regular job schedule 40 out of 160 hours per month, rendering Plaintiff unable to sustain a regular work schedule. (Doc. 11 at 12-14.)

Plaintiff's contention that the ALJ should not have discounted the credibility of Plaintiff's need to elevate his foot for an hour a couple times a day and his contention that the ALJ failed to incorporate that restriction in the hypothetical are related and will be considered together. If the ALJ's decision to find Plaintiff's need for elevation less than fully credible is supported by substantial evidence, then the ALJ's refusal to include that restriction in the hypothetical is, I suggest, also  properly supported.

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

In the instant case, I suggest that Plaintiff's testimony coupled with the medical evidence of record provides substantial evidence to believe that Plaintiff's need to elevate his leg is not

12

disabling and would not interfere with a daily work schedule. Plaintiff testified that he can stand for 15 minutes, walk for 20 or more minutes, uses a cane for long walks, has no trouble sitting, no trouble using his hands, and is able to lift 10 pounds. (Tr. at 154-55.) Plaintiff further testified that he does some cooking, cleaning, laundry, dishes, a little shopping, bathes and dresses himself, takes out the trash, mows the grass on a riding lawn mower, drives a car, and likes to tinker with "[s]mall motors or anything that I can get my hands on that I can tear apart or put back together." (Tr. at 156-58.) In addition, the occupational therapist did not note any occupational limitations other than not engaging in sustained walking or standing that exceeds 10 minutes. (Tr. at 75.) Furthemore, Dr. Behan's medical source statement concluded that Plaintiff would be able to sit about 6 hours during an 8-hour day. (Tr. at 147.) Finally, the RFC Assessment concluded that Plaintiff could stand or walk for at least 2 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday if allowed to periodically alternate sitting and standing to relieve pain or discomfort. (Tr. at 121.) Therefore, I suggest that the ALJ's decision not to fully credit Plaintiff's statement and resulting decision not to include that limitation in the hypothetical is supported by substantial evidence.

As to Plaintiff's contention that the ALJ failed to give controlling weight to Dr. Behar's conclusion that Plaintiff's limitations would disrupt a regular work schedule 40 out of 160 hours per month, I suggest that the ALJ's decision to decline to accord his conclusion any weight is also supported by substantial evidence. In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-

examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

As noted earlier, Dr. Behan's medical source statement was incorporated into the hypothetical except for his conclusion that Plaintiff's limitations would disrupt his work schedule for 40 out of 160 hours per month. As indicated in the RFC Assessment, this statement by Dr. Behan was made "in [the] context of describing [Plaintiff's] prior job, which he described as labor intensive work." (Tr. at 126.) Even if it were not made in reference to Plaintiff's prior work but work in general, I suggest that it is not supported by objective medical evidence, and that such a finding would contradict the doctor's own objective medical findings and opinions discussed

above. I therefore suggest that Dr. Behan's conclusion relating to work schedule disruption was properly denied controlling weight by the ALJ. *Wilson, supra*.

The ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed plaintiff's individual impairments in harmony with the relevant objective record medical evidence and Plaintiff's testimony. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

              s/ *Charles E Binder*
              CHARLES E. BINDER
Dated: December 16, 2009       United States Magistrate Judge


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 16, 2009        By  s/Patricia T. Morris
                Law Clerk to Magistrate Judge Binder